all right so let's get let's call the first case which is Phelps Oil versus Noble 19-1376 and arguing for Phelps is Mr. Barton you may proceed thank you your honor and may it please the court I'm George Barton I'm arguing for the appellant Phelps Oil and Gas LLC which I will refer to simply as Phelps I would like to turn first to the jurist subject matter jurisdiction issue this class action case was originally filed in state court in Denver and it was removed by defendant DCP with the consent of defendant noble to federal court and on behalf of the plaintiff I filed a motion to remand the case back to Denver the plaintiff and the members of the class have distinct and separate royalty interest distinct and separate claims and that the what DCP was essentially trying to do was to aggregate the value of the claims of both Phelps and the class to meet the $75,000 jurisdictional threshold and in response to our motion to remand the DCP did not present any evidence of the amount of Phelps's claim or the amount maximum amount that Phelps could recover if Phelps prevailed on its claims both for breach of contract and for declaratory relief I thought there was nothing in the record showing it was like $350 is the maximum that Phelps could get no yes judge judge hearts that came later of course as a result of discovery but that's that's ultimately what the amount of Phelps's claim was exclusive of interest and that disputed well I didn't see any dispute on that in you know from DCP and in any of the briefing to this court I think the theory that DCP has is that you know with respect to the declaratory judgment claim that if Phelps prevails on its claim that or that if Phelps prevails on its claim for declaratory relief that the cost to DCP and no bond that would be would meet the $75,000 jurisdictional threshold the problem don't you agree though that that that if you analyze it per contract and Phelps prevails there will be damages over $75,000 not as to Phelps's individual claim just efficavage there will not be because just Phelps's claim was for you know breach of contract and and this was pointed out by judge hearts I mean that the maximum amount of his recovery if he prevailed on his claim for breach of contract for royalty under payments was approximately $300 exclusive of interest the declaratory judgment claim in this case as it relates to Phelps really matches up to his claims from monetary relief and in that respect it's much different than the the Lavelle case and and that was cited in the briefs which was decided by this court in 2006 in list in the Lavelle case the plaintiff you know in that particular they sought a declaration for just on behalf of the that a failure to inform policyholders of diminished value coverage and the failure to pay diminished value claims is contrary to Colorado law and so they and then they wanted state farm to have an obligation to give notice to the insurance of the element of the diminished value coverage to evaluate all claims to determine if Dominion in value coverage is owed and it's so that and what this court ultimately decided is even as to each plaintiff that the cost to comply with that was was greater than $75,000 because the fact that the State Farm would have to change its business practices in this case by contrast if Phelps prevails on his declaratory judgment claim all all that happens is is that then it's there's a monetary amount of money that so develops as to his royalty interest and that amount as we demonstrated you know in the end it's discovery revealed was far less than $1,000 it wasn't anywhere close to $75,000 and if you look at the declaratory judgment I wasn't sure you could hear me let me try to understand the the claim here you're not asking them to do anything different with respect to royalties owed on gas sales after some date in the past is that correct right now you're happy with how they're computing it is that right right but the claim has turned out the only issue here is whether royalties were paid properly in the past that's correct okay and it's not like they have to change any way of doing business they just have to compute how much is owed is that right that's right no I will apparently I'm gonna get a different answer from a police oh yeah I mean that's definitely a case in fact the period of time in this case that's really an issue well not it's all to the past and there's an issue about you know a settlement a DCP settlement when they settle with noble but even that is to the past I mean it's it's related to the you know the royalty owner's share of the consideration that DCP paid to resolve its its pricing dispute with noble under the either viewpoint rule and we look to see what the cost is to the defendant what would be an instance where it wouldn't be aggregating and we get past the 75,000 for an individual plaintiff done well I think sometimes yeah well I think judge Phillips it it can what I think happened in Lavelle was that they in the Lavelle case there was all sort of a wide range of relief that was sought by the plaintiffs in that case including requiring State Farm to give notice to the policyholders and and do all sorts of other things that were sort of equitable relief in this case by contrast what Phelps has asked with respect to his claim for declaratory relief just relates to it parallels to his claim for money damages and in the sense that you know he wants a declaration that the world's you thought to be paid in a certain way but that parallels to his breach of contract claim and so you know the declaratory relief for Phelps individually is going to parallel to his claim for breach of contract so it doesn't meet the $75,000 threshold or anything close to it so that's that's the distinction between this case and Lavelle as and and of course Lundquist is the case that really is the first Tenth Circuit case that dealt with this and Lavelle did not overrule Lundquist it in fact it reaffirmed it but in in the Lavelle case because of the nature of the of the injunctive relief that was being sought the court said well even for each plaintiff each plaintiff for every plaintiff the cost of for the defendant to comply exceeded the $75,000 and so if the court does not have any other questions I will would like to move fairly quickly through the other two points recognizing that our position is on the subject matter jurisdiction but I'd like to move to the 50% claim and just very quickly the as part of this noble settlement agreement in the Holman case the part of the obligation of noble under the Holman settlement which was to pay both on a hundred percent of the sale proceeds retained by the provider of such well-hit services which in this case was DCP and there was summary judgment briefing on the issue of whether or not noble had breached its royalty payment obligations to Phelps because it had failed to pay based upon 50% of the sale proceeds that were actually retained by DCP as as the well-head provided and so noble filed a motion for summary judgment on that part of their statement of undisputed facts related to a contention that noble had complied with the 50% obligation and Phelps presented substantial evidence contradicting that that in fact noble had not paid royalties to Phelps based upon 50% of the amount of sale proceeds that was retained by DCP instead it was a much lower amount basically arising from the various claims that were part of the 2009 audit if you recall from the briefs and in resolving this issue the district court did not really evaluate the evidence as related to that issue and so as a result of that there was an order issued and it had it was a summary or judgment order in favor of noble but it had the effect of granting summary judgment in favor of noble on the 50% obligation claim which triggered our motion to reconsider with the trial court to clarify that the trial court really hadn't decided the 50% obligation claim because it hadn't evaluated the party's competing evidence on that issue or made any findings that related to the party's respective evidence submitted on the 50% obligation ultimately the court did not address you know what we were raising in in that motion to reconsider so effectively what we are saying with respect to the 50% claim is a we presented substantial evidence demonstrating that noble failed to meet its obligation on paying on the amount that DCP actually retained but the court I think misunderstood the claim I'm not sure why but that that claim was not properly adjudicated is it more than the condensate and the vapor recovery is that what you're talking about well those are two primary parts of it but not all of it I mean there's other parts of the claim that are what did the district court miss well I think what he missed was the fact that we were one of our claims was that noble failed to pay based upon 50% of the amount of sale proceeds that that DCP actually retained I think the court misunderstood that the 50% obligation is different than the 100% obligation the 50% obligation by its express terms is is requires noble to pay royalties to Phelps and the other class members based on 50% of the amount of sale proceeds that DCP actually retains and that how was Phelps shortchanged then he was sort of shortchanged because DCP retained a greater amount of sale proceeds then that you know as a result of the audit and and and then it was paid on then Phelps was paid on Phelps was paid on an amount of sale proceeds that was below the amount of sale proceeds that DCP actually retained and our evidence submitted in opposition to the summary judgment motion showed that 50% royalty also do on any leakage or loss and and so if you had greater sales you had less loss or leakage so the the resulting amount of the royalty would end up being the same as I understand it it doesn't know they may have understated how much they had sold but they but that's irrelevant because it's just 50% of the total gas production less what was sold to consumers that noble got its royalty on I said that very poorly but I think you probably understand what I'm getting it well I do but I think if we presented evidence that the amount of sale proceeds that DCP actually retained that the royalty owners were were not paid on the full amount of that and and I know it's a complicated but that's really what what and we presented evidence in opposition to the summary judgment on that and and basically well you know the trial court did not evaluate that evidence and didn't really make any specific findings on that in his summary judgment work so yeah I I realize my time is running short my 15 minutes but I do want to go quickly to the 17.5 million dollar consideration DCP settlement I think the prime I'm just going to go very quickly there the primary issue is the district court sort of added a qualification to the Watts and Westerman versus farms decisions and said that in order to prevail with respect to that you know having a royalty piece of the pricing dispute and the settlement of that pricing dispute between DCP and noble the royalty owners were required to show that there was consideration provided that was independent of the increased production of revenues to noble and I would respectfully Smith that's in direct contradiction to the to the Watts decision which specifically says that producers cannot escape the duty to pay royalties merely by disguising the form of consideration and this is true irrespective of the collateral benefits the items that conferred upon the less oars that this additional requirement that was imposed by the district court is is reversible error and Mike I know my time so I counsel we appreciate your argument I think are on my list next I mr. McClure are you are are you splitting the 15 minutes yes your honor I'm splitting the 15 minutes equally with miss Stevenson okay and who is planning on going first was that you mr. McClure yes that's right okay thank you you may proceed well your honors good morning for DCP midstream the only issue is jurisdictional in the briefing that was to the decision on the merits in favor of DCP with respect to the claims made against DCP so if there's jurisdiction then you would affirm the judgment as to DCP which was entered by the district court so what is the issue in the jurisdictional sense in the diversity jurisdiction context the only issue raised by them is not diversity but the jurisdictional minimum the seventy five thousand dollar minimum and we relied on the level case the level case followed the brand-name pharmaceuticals case out of the Seventh Circuit and we use the either-or methodology that is look to the value of the plaintiff of their claim or the cost of compliance of declaratory action brought against DCP it was the latter that we relied upon what's the cost of compliance for the and we hewed closely to level and we put evidence in in response to the motion to remand back in 2014 and judge Blackburn properly decided that there was jurisdiction and did not remand the case it's important to I want to respond directly what mr. Barton said we are not aggregating the claims of multiple members of the class we looked at it from the standpoint of the relief sought by Phelps alone and that relief sought by Phelps alone would aggregate to more the cost of us would cost millions of dollars for us to comply with the relief he sought and yet it's important to look at the nature of the claim the nature of the claim against yes go ahead claim against DCP was not a breach of royalty agreements royalty oil and gas leases that Phelps has and other class members have with noble the nature of the claim against DCP was a claim that Phelps was a third-party beneficiary of contracts for the sale and purchase of natural gas between noble on the one hand and DCP the midstream purchaser of gas on the other that's what the claim was against us that we DCP had underpaid noble on the gas purchase contracts that we have with noble and each of those contracts covers many many wells and many many many royalty owners that then at once DCP pays noble noble then has other obligations of its own to pay those royalty owners if you look at the cost that's what they were seeking the deck action in the case in the original complaint against us was the DCP should comply with its contracts with noble so it's that cost of compliance that is at issue what would be the cost to do all the things they sought in the declaratory action suit what would be the cost of DCP of complying with those contracts by changing fractionation and transportation cost deductions by changing ethane by changing vapor recovery all of those various things and there and what we did was to find out which of those contracts included wells in which Phelps had some interest there were about a dozen of those and then of wells we said there were five contracts out of the total of about a hundred and twenty four gas purchase contracts five of those contracts involved wells that ultimately downstream would result in royalties to Phelps and in those five contracts we paid a hundred and thirteen million dollars to noble over about six years and those contracts are continuing but to satisfy Phelps all you'd have to do is give noble I don't know $1,000 and then 300 of that or maybe you have to give them $20,000 you all you're talking about all that all we're talking about here is money owed I don't think so your honor I don't think so at all you're not having to change your systems or anything judge Phillips asked where for an example of a case where you wouldn't aggregate let me I think it'll be useful to give an example where you wouldn't aggregate because it seems to me you're aggregating that there's a wonderful opinion let let me let me I think this will be helpful to everyone there's a wonderful opinion by judge Mott's in the Microsoft litigation it's in a Microsoft or 127 federal supplement second at 702 in that case there was a claim against Microsoft for antitrust violation because you couldn't use your own word processor the Microsoft system there software whatever wouldn't allow you to use your own word processor and the claim was that's an antitrust violation Microsoft said if we have to change our system to satisfy one plaintiff it's going to cost us tens of millions of dollars we can't satisfy one plaintiff by just doing some little thing we have to change a big deal and so the cost to us is very large here what has happened is there are a lot of people like Phelps who according to Phelps or not properly paid their royalties and all you have to do is calculate for each person each royalty owner how much they would have to get and what you're doing you don't have to change your systems you have to make a computation and what you've done is added up all those computations in practice I don't see how it's different from somebody suing a consumer suing AT&T and saying you're charging excessive interest on my bill I only get a dollar fifty but you have ten million dollar ten million customers so AT&T say well if they win we're stuck with paying 150 million dollars the the I'll give you I'll mention one more thing that's you cited Seventh Circuit case there's an opinion by the Seventh Circuit by Posner this was an injunction but I don't see why it wouldn't apply to declaratory judgment the test we repeat is the cost to each defendant of an injunction running in favor of one plaintiff otherwise the non-aggregation rule would be violated and all you have to do is pace I don't know a few thousand dollars to noble so they can pay the $300 in royalties to Phelps well I just don't think that that is what we're doing we don't we DCP had no contract at all and no obligation to pay any royalties to anybody the only claim that was made against DCP by Phelps was that that DCP was violating its with noble and those contracts those specific contracts require a change of procedure the deck action those contracts continue the royalty agreements between noble and the other folks continue as well all we the cost for us we couldn't just pay $300 to noble and then that 300 gets sent on to somebody else we sent $300 to noble maybe one cent of it one tiny little cent of it would be the percentage that would ultimately go to to to Phelps we're talking about the cost of compliance of a contract of five contracts between DCP and noble and the only way to do that it's a common indivisible contract is to is to change the practices that they were seeking in the deck action and that change of practice in the past and continuing into the future would cost us millions of dollars and that's what the McCarty affidavit said why would you have to change any practice in the future I thought Phelps has agreed that at this point you're paying everything properly why that's not what that's not what he said when he filed the original complaint and that's the basis on which you have to evaluate things at that time they were seeking to us change our practices going forward as well as in the past and with respect to our contract with noble not anything to do with the individual aggregation of claims by the class members that they may want to aggregate against noble you're right I do you miss Stevenson's time yes I'll defer the rest of my time in the Stevenson thank you very much thank you may it please the court um noble settled its audit claims against DCP in exchange for DCP's agreement to modify several gas gathering agreements and also to commit 17.5 million dollars to invest in improvements to DCP's own infrastructure the benefit of this deal the settlement to noble was the prospect of increased future gas production and noble even valued that that potential future production to have a net present value of 44 million dollars in fact the increased production has even exceeded that and Phelps has been paid royalties on all of that increased gas production now despite that Phelps brought this action and he wants more than that so let me start with the 50% obligation claim and what the evidence was on that and judge hearts I thought you were explaining the relevant provision exactly right if you look to paragraph six of the Pullman settlement which is the future royalty calculation method what you can see is it was a trying to address any type of gas gathering contract and what it says the fundamental principle principle is nobles going to pay royalties on 100% of anything that noble gets paid for and it's going to pay 50% on anything else any other gas that comes out of its wellhead on which noble is not paid it's going to pay royalties on 50% of that amount to its royalty owners and so the allegation here and the focus that the plaintiff is trying to put specifically on the retained proceeds just doesn't matter we didn't need DCP we didn't need to rely on what DCP was telling us about how many proceeds have retained because we're paying on 50% of anything that we're not getting paid on and just to make that clear you know noble measures the production that's coming out of its wellhead at the wellhead so it knows what those volumes are and then it's getting a report of how much it's getting paid on and all it has to do to figure out how much to pay royalties on is to calculate the difference between those two things and I think what the plaintiff has tried to suggest here is that it matters how much DCP was reporting it was retaining in proceeds and it just doesn't matter regardless of how DCP was retain reporting those volumes we were paying on 50% of all unaccounted for production that we had the condensate and the vapor recovery I'm sorry can you say that again does it include the condensate and the vapor recovery yes it does and in fact why in the world did they agree to just give you a 17.5 million that must have been for something well it wasn't just 17.5 million it was also the renegotiation of the gas gathering contracts so those were both very valuable things again that we estimated to provide us with a net present value but we have an audit we have your audit and your audit declares you owe us X million dollars for some reason and what you're proposing right now would seem to undermine the whole basis of the audit you're saying everything was paid well I think you have to separate Nobles relationship with DCP from Nobles relationship with the royalty owners and so you know when there is it's it's true that we had claims for those amounts against DCP we thought DCP should have been paying us more but when the DCP paid correctly on this 50% obligation which is stuff that we weren't paid on that's really not impacted by our claims that DCP owed us more money it's it's an entirely separate claim and and when you look to the summary judgment record on this we put in evidence you know certainly of how the Holman settlement the contract terms work in other words that it doesn't matter what DCP says it's retaining we pay 50% on all volumes on which we're not paid we put in that and then we put in an affidavit from our director of revenue accounting who said I've reviewed how Phelps was paid and he was paid a hundred percent on everything that noble got paid and 50% on everything else now mr. Barton keeps saying DCP had subsemi excuse me Phelps had substantial evidence to the contrary but when they responded to that statement of undisputed fact all they said was noble hasn't complied and then they cited to their entire motion for summary judgment which didn't mention the 50% obligation even once so that was the record on which this claim was presented to the district court and you know I want to make sure it's clear the argument that DCP excuse me that Phelps presented to the district court both through its complaint and all of the factual allegations in there and through all of its summary judgment briefing was exclusively based on its claim that it should be paid royalties on the 34 million dollar value of the audit settlement they made no argument any other argument of any kind or theory about how they had been underpaid on the 50% obligation and just some convincing the conviction judge Phillips I think you both asked questions which is how where where were you underpaid what was the consequence to you and we've still never heard an articulation of what that was and on that record the district court was right to affirm on that breach of contract claim all of the evidence was royalties because of the improvements based on the 17 million dollars so your honor that 17.5 million dollars was DCPs investment in its own infrastructure the only benefit to noble from that was this increased future gas production and we are paying royalties on that so we agree that that Phelps is entitled to royalties on the consideration that we got from the settlement but the consideration that we got was increased future gas production and they are being paid royalties on that now they had a whole period of discovery to try to find any evidence that we got any other kind of benefit from DCPs investment in that infrastructure and they came up empty-handed there wasn't anything and you know they refer to this provision that says for the primary benefit of noble that was for noble versus other producers not for noble versus DCP and I see my time has expired Thank You counsel we appreciate the arguments counsel your excuse in the case shall be submitted thank you